# United States District Court

FILED
APR 6 2007
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

__MIDDLE__ DISTRICT OF __ALABAMA__

UNITED STATES OF AMERICA

v.

DANDRE STOKES

CRIMINAL COMPLAINT

CASE NUMBER: 3:07 mj 36-TFM

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __April 5, 2007__, in __Lee__ county and elsewhere within the __Middle__ District of __Alabama__ defendant(s), (Track Statutory Language of Offense)

did attempt to possess with intent to distribute cocaine,
a Schedule II Controlled Substance,

in violation of Title __21__ United States Code, Section(s) __846__. I further state that I am a(n) __DEA Special Agent__ and that this complaint is based on the following facts:
Official Title

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

April 6, 2007                              at     Montgomery, Alabama
Date                                              City and State

Terry F. Moorer, U. S. Magistrate Judge          _____
Name & Title of Judicial Officer                 Signature of Judicial Officer

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY, ALABAMA


AFFIDAVIT IN SUPPORT OF ARREST WARRANT


I, Neill Thompson, having appeared before the undersigned United States Magistrate, and having been duly sworn, deposes and states:


I am a Special Agent with the Drug Enforcement Administration assigned to the Montgomery, Alabama District Office, specifically to the High Intensity Drug Trafficking Area Task Force. I have been a DEA Agent since June 1998. Prior to June 1998, I was a police officer with the Tuscaloosa Police Department for a period of approximately twelve years, with over four of those years as a narcotics detective. During the course of my career, I have written and executed numerous search and seizure warrants for narcotics, dangerous drugs, records, books, and proceeds derived as a result of this illicit activity. Further, I have arrested numerous individuals for violations of State and Federal narcotics statutes. I have attended and successfully completed training concerning narcotics trafficking, conspiracies, and money laundering methods that narcotics traffickers employ. The following information has been obtained either through personal observation or from other law enforcement officials.

1. Since October 2005 the Montgomery District Office of the Drug Enforcement Administration (DEA) and the Montgomery Police Department has been investigating the drug trafficking activities of Dandre Fernandus STOKES. In November 2005 agents executed search warrants at STOKES' residence and at storage units used by STOKES and seized cocaine, a firearm, over $186,000.00 cash, and other evidence. STOKES fled from a traffic stop during the investigation and was not apprehended.
2. In December 2006 a federal defendant stated, in an interview, that before his arrest, he had been supplying STOKES with cocaine for approximately two years, and had sold him approximately 60 kilograms of cocaine total. The defendant said that STOKES knew he had a Hispanic source of supply in the Atlanta area. The defendant agreed to cooperate with law enforcement in the investigation of STOKES and provided STOKES with a telephone number that he represented was to the Hispanic source of supply. The defendant told STOKES that the source of supply was still able to supply high quality cocaine.
3. Within a matter of days, a male who identified himself as "D" called the telephone and spoke with Special Agent (SA) Juan Carlos Calvo, who is assigned to the Atlanta Field Division of the DEA. SA Calvo, acting in an undercover capacity, told "D" that he was able to supply him with cocaine, and the two discussed prices and future arrangements. More telephone calls were made between SA Calvo and "D", and the two agreed that SA Calvo would bring

5 kilograms of cocaine to Auburn, Alabama on April 5, 2007. On that date, plans were formulated to arrest STOKES for attempting to purchase the cocaine.

4. At approximately 11:00 AM, STOKES arrived at the Arby's restaurant in Auburn to meet with SA Calvo. The two met in the Arby's restaurant and then went outside to an Infiniti SUV that STOKES had driven to the restaurant. SA Calvo and STOKES entered the SUV and talked about the transaction and future transactions, and STOKES said that he could do "ten or fifteen" (kilograms) on future transactions. SA Calvo asked to see the money before he went and obtained the cocaine. STOKES showed SA Calvo a large amount of cash hidden near the sunroof area of his vehicle. SA Calvo left the SUV and began walking toward his car, which was parked in the Wal-Mart parking lot, indicating that he had seen the money.

5. Agents approached STOKES and attempted to place him under arrest, but STOKES fled the parking lot, striking a Task Force Officer's car in the process. STOKES fled the area and was being pursued by several law enforcement vehicles including a marked Alabama State Trooper Unit. STOKES entered Interstate 85 and went southbound at speeds over 130 miles per hour. The pursuit lasted approximately 40 miles and STOKES' was disabled near Montgomery by using "spike strips" across the roadway. STOKES fled from the vehicle on foot but was apprehended by law enforcement.

6. A search of the vehicle resulted in the seizure of approximately $80,000.00 from the ceiling of the vehicle. STOKES also had approximately $1,000.00 in his pocket. Also seized from the vehicle was a small amount of marijuana.

7. STOKES was advised of his rights, Miranda warnings, and stated that he understood his rights. STOKES stated that Kelvin ARTIS told him to take money which was given to him by ARTIS' girlfriend, and meet the Hispanic male. STOKES said that the Hispanic male was supposed to give him something to bring back to Montgomery.

8. Agents were able to establish that STOKES' residence was a house located at 4505 Deerfield Court, Montgomery, Alabama. A state search warrant was obtained for the residence, and executed at approximately 5:40 PM. At the house, agents found several documents suggesting that STOKES lived at the residence. Agents also seized approximately $100,000.00 cash, a loaded assault rifle, and a .45 caliber pistol from a nightstand which also contained documents relating to STOKES.

9. Based on my experience and training, it is my belief that probable cause exists to arrest Dandre STOKES for violations of Title 21, United States Code, Section 846, Attempt to Possess with Intent to Distribute Cocaine. Further, that the events occurred within the Middle District of Alabama.

Further your Affiant sayeth naught. I swear under penalty of perjury that the forgoing is true.

NEILL THOMPSON
SPECIAL AGENT
DRUG ENFORCEMENT
ADMINISTRATION

Subscribed and sworn to before me this 6th day of April, 2007.

Terry F. Moorer
United States Magistrate Judge