IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:07cr96-MHT |
| DEANDRE STOKES | ) | (WO) |

## OPINION AND ORDER

This case is again before the court on defendant
Deandre Stokes's motion to withdraw his guilty plea.
Based on the representations made in open court on May 14,
2009 and upon the court's examination of the transcripts
of each of Stokes's prior hearings before the court and
before the magistrate judges, Stokes's motion will be
granted.

A defendant may withdraw a plea of guilty after the
plea has been accepted by the court and prior to
sentencing if "the defendant can show a fair and just
reason for requesting the withdrawal." Fed. R. Crim. P.
11(d)(2)(B).  In considering this standard, the court is
to evaluate the totality of the circumstances, including

"(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the Government would be prejudiced if [the defendant] were allowed to withdraw his plea." United States v. Garcia, 2009 WL 975539, at *1 (11th Cir. Apr. 13, 2009) (unpublished) (quoting United States v. Buckles, 843 F.2d 469, 471-72 (11th Cir. 1988)).

The record strongly supports Stokes's contention that he did not fully understand the potential sentences he faced and that he was not adequately informed of crucial information necessary to a knowing and voluntary plea. Pursuant to the plea agreement, Stokes agreed to plead guilty to three counts; those counts carried mandatory minimum penalties of 5, 10, and 25 years respectively. The government agreed to move for a downward departure equivalent to 10 years if, in its sole discretion, Stokes had fulfilled the terms of his cooperation agreement. If, after sentencing, Stokes continued his cooperation, the

government agreed to move for further departures that would result in a sentence of at most 20 years and at least 15 years incarceration. At the time of sentencing, based on this cooperation before sentencing, Stokes was looking at a sentence of approximately 34 years.

On March 11, 2008, Stokes pled guilty before the magistrate judge and indicated that he understood the plea agreement. However, when the magistrate judge read the potential sentences to Stokes, he listed the potential mandatory penalties--a lengthy recitation that included both a discussion of the advisory Guidelines and the information that the counts would "run consecutive." However, the magistrate judge did not explain to Stokes what the term "consecutive" means or otherwise confirm that Stokes understood how it is used in the context of federal sentencing. Moreover, the magistrate judge did not add together the various potential terms of imprisonment or further explain the interaction between the Guidelines and the mandatory minimums to give any

3

indication of how the offenses would combine to produce a total period of incarceration.   Finally, and most importantly, the magistrate judge did not explain the interaction between these mandatory minimums and the terms of Stokes's plea agreement.   While the magistrate judge explained Stokes's potential exposure for each count (including mandatory sentences of 5, 10, and 25 years), he never explained to Stokes what the consequences of the plea agreement would be; that is, he never explained the approximate length of the sentence Stokes would actually get pursuant to the plea and the government's downward departures.   Thus, while Stokes may very well have understood that his agreement would subject him to something less than the statutory mandatory minimum, he was not given any information concerning just how small or how large the difference could be at the time of sentencing.

On May 12, 2008, Stokes appeared before a magistrate judge for a hearing initiated by his pro se letter to the

4

court indicating that he did not understand the charges against him.  At that hearing, the magistrate judge, defense counsel, and counsel for the government discussed the nature of the charges against Stokes, but they also briefly discussed Stokes's "sentencing exposure" if convicted (which counsel for the government represented was 40 years imprisonment).  However, the parties never mentioned or explained the actual sentence Stokes was slated to receive pursuant to the plea agreement and including various departures.  Indeed, the discussion about sentencing was difficult to follow, and it included several confusing comments, particularly defense counsel's indication of Stokes's discomfort with specific aspects of the Sentencing Guidelines, even though his sentence was driven largely by mandatory minimums.  At the end of the hearing, Stokes decided not to withdraw his plea of guilty.

On July 3, 2008, Stokes appeared before the court for sentencing.  The court noticed the very lengthy potential

sentence (approximately 34 years) and asked Stokes if he understood his sentence.  Stokes looked surprised by the court's statement and indicated that he was not aware of the proposed sentence of 34 years and that he had never been told the sentence would be that long.  The court then questioned Stokes's counsel at the time, who admitted that she had never discussed that total possible sentence with Stokes and that, when she had added it up for him, she had told him that he would be facing a sentence of 168 months (14 years).  Counsel for the government suggested that Stokes may have been confused about how the sentence would be potentially reduced pursuant to the downward departures on the table, and the government eventually proposed a lengthy continuance to allow for Stokes's cooperation prior to sentencing.  Such an approach would allow Stokes's potential sentencing exposure to be far more certain at the time of his sentencing.  All parties agreed to the continuance, and the case was continued.

6

This record makes clear that Stokes, faced with an extremely lengthy sentence, did not fully understand the implications of his plea agreement on the amount of time he would receive at the time of sentencing. Particularly when the potential sentences are so prodigious, it is vital that a defendant fully appreciate the consequences of the decision to plead guilty. The record makes clear that Stokes's former counsel did not fully discuss with him the sentence that he faced at the time of sentencing (approximately 34 years) pursuant to his plea agreement. In short, no one 'brought home' to Stokes exactly what sentence or range of sentences he would confront at the time of sentencing; indeed, it appears that his attorney affirmatively misled him (albeit perhaps unwittingly) into thinking he would receive 14 years at that time, which was incorrect in several respects: the stated 14-year sentence was lower than the minimum provided for in the plea agreement; the sentence (aside from being incorrect) was not to be his sentence at the time of sentencing but

rather was conditional on a future decision by the government, pursuant to its sole discretion, to significantly lower the sentence based on Stokes's cooperation after sentencing; and the sentence (again, aside from being incorrect) failed to reflect that it was only a minimum sentence and not the actual Stokes would necessarily receive (a range of 15 to 20 years) even if the government were to exercise its discretion to move for a sentence reduction. The court cannot therefore conclude that Stokes's plea was knowing and voluntary. The government has not shown any potential unfair prejudice resulting from Stokes's withdrawal, but the dangers implicated by the gravity of the difference in potential sentences faced by Stokes and his confusion throughout the process are so severe as to outweigh any conceivable prejudice to the government or strain on judicial resources (if any).

Accordingly, it is ORDERED that:

8

(1) Defendant Deandre Stokes's motion to withdraw his guilty plea (doc. no. 79) is granted.

(2) Defendant Stokes's guilty plea is withdrawn and set aside.

(3) This case will be scheduled for trial forthwith.

DONE, this the 18th day of May, 2009.

              /s/ Myron H. Thompson
              UNITED STATES DISTRICT JUDGE